| | | |
|---|---|---|
| ERIC WYNN, ROCHELLE EDWARDS, and TISHA MAR CALLO, individually and on behalf a class of persons similarly situated, | ) ) ) | Hon. James F. Holderman |
| | ) | Hon. Mag. Susan E. Cox |
| Plaintiffs, | ) ) | Case No. 11 cv 4588 |
| v. | ) ) | |
| EXPRESS, LLC, | ) ) | |
| Defendant. | ) ) | |

## PLAINTIFFS' MOTION TO COMPEL

Plaintiffs, Eric Wynn, Rochelle Edwards, and Tisha Mar Callo, individually and on behalf of a class of persons similarly situated, by their attorneys, respectfully request that this Court enter an Order compelling Defendant Express, LLC to produce Store Banking Routine forms. In support of this motion, Plaintiffs state as follows:

### Summary

1. Plaintiffs bring their claims under the Fair Labor Standards Act ("FLSA") for making unpaid bank deposits for Defendant, a nationwide clothing retailer.

2. In this Motion, Plaintiffs seek production of Store Banking Routine forms from each of Defendant's stores. The Store Banking Routine forms are, according to the testimony of Defendant's Rule 30(b)(6) corporate representative, the best document to determine when the employees at each of Defendant's stores made bank deposits, which is a critical issue in this case.

3. Defendant is well aware of these Store Banking Routine forms and their importance - Defendant recently settled an Illinois class action involving approximately 19,866

employees for identical unpaid bank deposit claims as those at issue here (in the instant case, Plaintiffs seek a nationwide class).

4.      Defendant admits that making the bank deposits is "work" under the FLSA.

5.      The Store Banking Routine forms are covered in Plaintiffs' July 29, 2011 requests for production, but Defendant has yet to produce a Store Banking Routine form from one single store.

6.      Plaintiffs seek production of the Store Banking Routine forms because, *inter alia*, their memorandum in support of conditional class certification is due on October 11, 2011. Plaintiffs intend to reference the forms in their memorandum.

### Legal Standard

7.      "A party may file a motion to compel discovery under Rule 37 where another party fails to respond to a discovery request or where the party's response is evasive or incomplete." *United States v. Ligas*, 2006 U.S. Dist. LEXIS 31656, No. 04 C 930, 2006 WL 1302468, at *4 (N.D. Ill. May 10, 2006) (Holderman, J.) (citing Fed. R. Civ. P. 37(a)(2)-(3)). The movant must certify a good faith attempt to confer with the party failing to produce discovery. *Fed. R. Civ. P. 37(a)(1); L.R. 37.2.*

### Plaintiffs' Local Rule 37.2 Efforts

8.      Plaintiffs' July 29, 2011 document production request number eight asked Defendant to produce the following:

> For the period of July 7, 2008 up to and including the present, all Documents relating to Defendant's procedures, practices and policies relating to Co-Managers and Hourly Employees handling and making Bank Deposits....

9.      On September 8, 2011, Plaintiffs deposed Craig Heckman, whom Defendant designated as its 30(b)(6) corporate representative most knowledgeable about Defendant's bank

deposit procedures during the class period. Mr. Heckman is Defendant's Director of Human Resources.

10.     Mr. Heckman identified the Store Banking Routine form as the best document to determine when Defendant's stores and employees made bank deposits. The Store Banking Routine form was not produced or disclosed by Defendant prior to his deposition.

11.     When Mr. Heckman identified the document in the deposition, Plaintiffs immediately asked defense counsel (during the deposition) if they had the Store Banking Routine form, and Defendant produced a blank Store Banking Routine form during the middle of Mr. Heckman's September 8, 2011 deposition. A copy of the blank Store Banking Routine form is attached hereto as Exhibit 1.

12.     On September 10, 2010, Plaintiffs sent a written request that Defendant produce the Banking Routine forms for each of Defendant's stores by September 15, 2011. (Ex. 2)

13.     On September 15, 2011, Defendant stated that it had begun to undertake efforts to collect the Store Banking Routine forms but would not identify when it would produce the documents, and stated that its Express stores "do not have readily available email capability. Consequently, we will not be able to collect these forms by [September 16, 2011]." (Ex. 3, p7)

14.     On September 15, 2011, Plaintiffs informed Defendant that it would have to file a motion to compel production of the Banking Routine forms on September 19, 2011, absent a production by that date. Time is of the essence due to the class certification briefing schedule – as noted, Plaintiffs' memorandum in support of conditional class certification is due on October 11, 2011. (Ex. 4)

15.     On September 19, 2011, Plaintiffs had not received a completed Store Bank Routine form from a single store, and they asked Defendant if it had sent Plaintiffs any Store

Banking Routine forms. Defendant had not collected any such forms, and gave a vague statement that the process "will take some time [and Defendant] will advise once we have gathered the forms." (Group Ex. 5)

16.     On September 23, 2011, Plaintiffs informed Defendant that: i) they would consider withdrawing this Motion if Defendant produces the Store Banking Routine forms prior to the presentation of this Motion; and ii) they would contact the Court before this Motion is presented and ask that it be stricken or withdrawn without prejudice. (Ex. 6)

17.     Because Plaintiffs' memorandum in support of their conditional class certification motion is to be filed on October 11, 2011, and since the Store Banking Routine forms are covered in Plaintiffs' July 29, 2011 production requests and none had been produced by September 23, 2011, Plaintiffs present this Motion.

## Argument

### i.     *Store Banking Routine Forms*

18.     The Store Banking Routine forms are relevant and probative in this case for several reasons. First, they show when Defendant's employees made bank deposits – in the morning or at night. This is important because Plaintiffs contend, *inter alia*, that Defendant required and/or permitted its employee to make unpaid nightly bank deposits. The Store Banking Routine forms specifically designate whether the responding store's bank deposits schedule was in the morning or at night.

19.     Mr. Heckman (Defendant's Director of Human Resources and 30(b)(6) witness regarding bank deposit procedures) testified that the Store Banking Routine forms are the best document to determine when a particular store made deposits:

Q. And can you think of a better document that would provide you information on a store-by-store basis when that store made deposits other than Plaintiffs' Exhibit 12 [i.e., Store Banking Routine forms]?
...
A. No, I'm not aware.

(Ex. 7, p.118-119)

20. Mr. Heckman testified that the Store Banking Routine form "certainly is an individual store's opportunity to document in general how they're doing their banking procedures." (Ex. 7, p114) He also testified that "it is a requirement according to SOP [Store Operating Procedures]" for a store to use the Store Banking Routine form to document how the store is doing its bank deposits and when such deposits are made. (Ex. 7, p.114-115)

21. Second, these forms identify whether a particular store's bank was located inside a mall, a mall parking lot or elsewhere (i.e., not on mall property). Plaintiffs contend that Defendant did not record the time employees spent making bank deposits, in violation of the FLSA and 29 C.F.R. § 516 (requiring employers to record all time worked and to keep time records for three years). Determining where each store's bank is located will, in turn, help assess the time it took to make the deposits (notably, Defendant's Fourteenth Affirmative is based on a *de minimus* argument). Defendant may argue that this information may be gleaned from other documents, but in the words of its own Rule 30(b)(6) corporate representative regarding Defendant's bank deposit procedures, the Store Bank Routine forms are *the best* document to determine when Defendant's stores and employees made bank deposits (i.e., at night or during the day).

22. Third, the Store Banking Routine forms are important because they are probative of notice, willfulness and whether Defendant knew or should have known that its employees were making bank deposits without being paid for that work. Plaintiffs contend that Defendant

knew or should have known that employees who made night bank deposits (and bank deposits in the morning) did so off-the-clock and without pay. The forms specifically identify whether the bank deposits are made in the morning or at night (Plaintiffs contend, *inter alia*, that night bank deposits were made off-the-clock and without pay).

23.     Additionally, in its Ninth Affirmative Defense to the Complaint, Defendant asserts that Plaintiffs and the putative class members performed the unpaid bank deposits "without Express' actual or constructive knowledge." In its Nineteenth Affirmative Defense, Defendant asserts that it acted in good faith. The Store Banking Routine forms directly confront these contentions and Affirmative Defenses because they will show, for example, that District Managers were aware of employees making bank deposits at night: a duplicate copy of the form is given to Defendant's District Managers (as indicated at the bottom of the form). It will also show which District Managers knew of changes to the Banking Routine procedures because, as the form indicates, "Changes to your routine must be approved by the District Sales Manager." (Ex. 1) Plaintiffs contend that if the District Managers knew employees were making bank deposits at night, for example, then they (and by extension, Defendant) knew or should have known that the employees were making the deposits "off the clock" and without pay, in violation of the FLSA.

24.     Defendant claims that it is "not a simple or easy task" to collect and produce the Store Banking Routine forms because "the stores do not have readily available email capability." (Ex. 3, p7). This is not a legitimate or credible reason to withhold the forms or continue to delay their production until after important depositions are taken and after Plaintiffs' memorandum is filed, which Defendant is trying to do.

25. First, even if Defendant does not have the capability to email stores or store managers in the year 2011 (which is difficult to believe), then Defendant could easily fax a request to the stores to send copies of the Store Banking Routine forms. Defendant's District Manager Julie Janski testified that District Managers can "fax" requests and other information to the stores.[1] Thus, if Defendant can fax information to its stores, then there is no reason that it could not fax a request to the stores for them to in turn fax their Store Banking Routine forms to the corporate office or outside counsel. Defendant is a publicly traded, multibillion dollar company that directly ships goods to over 60 countries across the world; it is certainly acquainted with the utility of the fax machine.

26. Second, defense counsel's representation that "it will take some time" is another way of saying the production will not be anytime soon (the forms were initially requested on July 29, 2011). Moreover, it is not consistent with the testimony of Defendant's Vice President of Brand Security, Joe Reisinger, who testified at his deposition that a litigation hold was issued to all of the stores:

> Q. Now, store managers have information in their possession regarding Bank deposits, correct?
> A. Yes. And that information was given to the stores.
> Q. What information?
> A. The document hold relative to bank deposits.

(Ex. 8, p.42, 43)

In other words, if a document hold relating to bank deposits was issued and communicated to all of Defendant's stores, then certainly a simple request to fax or email the Store Banking Routine form to the corporate office or outside counsel can similarly be accomplished expediently (and should been requested after Defendant received Plaintiffs' July 29, 2011 production requests).

---

[1] District Managers Julie Janski also testified that in her role as District Manager in Wisconsin from 2005 until April 2010, she was personally aware of employees making bank deposits at night at stores over which she presided as District Manager in Wisconsin, and Plaintiffs contend she, and by extension, Defendant, knew that the night bank deposits were performed by employees without pay.

*ii.* ***Defendant's Boilerplate and Evasive Responses to Production Requests***

27.     Plaintiffs issued 23 production requests that go directly to the issued in their pending motion for conditional class certification. (Ex. 9)

28.     In response, Defendant issued four pages of general, boilerplate objections. Then, in response to 20 of the 23 requests, Defendant stated, "Subject to and without waiving the foregoing objections, Express will produce relevant, non-privileged responsive documents in its possession, custody and control located after a reasonable search." Defendant produced approximately 1,000 pages of documents, but it does not identify in its production responses which requests the documents are responsive to, and Plaintiffs are left to guess and speculate whether Defendant has in fact fully and fairly responded to each request and whether Plaintiffs have obtained the discoverable documents they are entitled to discover.

29.     Defendant agreed to amend its interrogatory responses to include citations to bates numbers of the documents referenced in its interrogatory answers, but after the parties' LR Rule 37.2, the parties agreed to disagree on this issue and Defendant refuses to identify documents by bates numbers in its production responses.

30.     This is gamesmanship that does not meet the spirit of the Federal Rules of Civil Procedure, does not foster transparency in the discovery process, and is not fair to Plaintiffs who should be afforded the opportunity to assess fairly whether Defendant has properly responded to production requests and produced relevant and discoverable document.

## Conclusion

31.     The Store Banking Forms are critical documents and are probative of the claims and issues in this case. Plaintiffs requested such documents in their July 29, 2011 production requests, and there is no just reason to delay their production any longer. Plaintiffs have already

suffered prejudice because they were not able to question fairly two Rule 30(b)(6) witnesses about the forms and the banking deposit procedures for each store contained in the forms. Indeed, the form was not even identified or disclosed by Defendant until the middle of the second Rule 30(b)(6) deposition on September 8, 2011.

32.     Had Plaintiffs been furnished the Store Banking Routine forms in a timely fashion, Plaintiffs could have and would have used the Store Banking Routine forms to elicit testimony from critical witnesses that, in turn, would have been helpful to the arguments that will be made in Plaintiffs' memorandum in support of conditional class certification, which is due less than three weeks from the date of filing this Motion.

33.     Defendant knew or should have known that these documents are important considering: i) they just settled a class action with approximately 19,886 employees in Illinois for identical claims (which was filed on September 7, 2010); and ii) pursuant to the testimony of Defendant's Director of Human Resources, there is no better document to determine when Defendant's stores and employees made bank deposits.

WHEREFORE, Plaintiffs request that this Honorable Court enter an Order:

a. Compelling Defendant to produce the Store Banking Routine forms for each of its stores within 5 business days of the presentment of this Motion;

b. Compelling Defendant to identify which stores do not possess the Store Banking Routine forms;

c. Compelling Defendant to amend its responses to Plaintiffs' document production requests and identify by bates number the particular documents that Defendant asserts are responsive to each production request; and

d. For such other relief as this Court deems appropriate under the circumstances.

DATED:  September 23, 2011

Respectfully submitted,

ERIC WYNN, ROCHELLE EDWARDS, and
TISHA MAR CALLO, individually and on behalf
of a class of persons similarly situated,

/s/ Thomas M. Ryan
One of Plaintiffs' Attorneys

James X. Bormes
Law Offices of James X. Bormes, P.C.
8 South Michigan Avenue
Suite 2600
Chicago, IL 60603
(312) 201-0575

Thomas M. Ryan
Law Office of Thomas M. Ryan, P.C.
35 East Wacker Drive
Suite 650
Chicago, Illinois  60601
(312) 726-3400

Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
35 East Wacker Drive
Suite 650
Chicago, IL 60601
(312) 789-9700

Peter Converse
Catherine P. Sons
Converse & Brown
8 S. Michigan Ave., Suite 2600
Chicago, IL 60601
(312) 789-9700