**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC WYNN, ROCHELLE EDWARDS, and TISHA MAR CALLO, individually and on behalf a class of persons similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 11 cv 4588 |
| EXPRESS, LLC, | ) ) | Hon. James F. Holderman |
| Defendant. | ) ) | Hon. Mag. Susan E. Cox |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL

Defendant, Express, LLC ("Express" or "Defendant"), by and through its attorneys, hereby submits its response to the Motion to Compel filed by Plaintiffs ("Plaintiffs' Motion").

### I.    Store Banking Routine Forms

1.    On September 23, 2011, Plaintiffs filed a motion seeking to compel the production of any Store Banking Routine forms maintained by Express stores throughout the country. Plaintiffs' Motion is completely unnecessary. Prior to the filing of Plaintiffs' Motion, Express agreed to produce these documents on multiple occasions. (See Plaintiffs' Motion at ¶ 13; Exhibit 3 to Plaintiffs' Motion at p. 7; and Exhibit 5 to Plaintiffs' Motion at p. 1). There is no dispute about this. Instead of engaging in meaningful dialogue with Express regarding a feasible production schedule, however, Plaintiffs chose to file a motion with this Court.

2.    In this case, Plaintiffs allege that Express failed to pay its co-managers and hourly employees for transporting and making "off-the-clock" night bank deposits. Prior to October 2010, Express maintained a policy that required stores with bank depositories located outside the mall to make their bank deposits in the morning and that permitted, but did not require, stores

with bank depositories in the mall to make night bank deposits. Express did not (and does not), however, maintain a policy that directed or permitted night bank deposits to be conducted without pay, or "off-the-clock." In fact, Express employees are required to be clocked into the Company's timekeeping system while performing any work.[1] From October 2010 to the present, all Express stores have been required to make bank deposits in the morning.

3.    Historically the Store Banking Routine form was a document intended to educate a new store manager of the store's bank deposit routine and included: (1) the name of the depository bank; (2) the bank depository location; (3) the timing of the bank deposit; and (4) and whether an armored car service picks up the store's bank deposits.

4.    Plaintiffs' claim that Express is aware of the importance of the Store Banking Routine forms because it recently settled an Illinois class action (*Eggins, et al. v. Express, LLC*) involving "identical unpaid deposit claims … at issue here" is misguided. (Plaintiffs' Motion at ¶ 3). In fact, Defendant's investigation for purposes of the *Eggins* case revealed that in practice, Express stores had not been completing or maintaining Store Banking Routine forms for years. Significantly, Plaintiffs' counsel has known of the existence of the Store Banking Routine long before this lawsuit commenced, as it was also identified in the *Eggins* litigation. When Defendant attempted to collect the Store Banking Routine forms from its Illinois stores in the *Eggins* case, Defendant discovered that none of the stores that responded had been maintaining a Store Banking Routine form. As a result of this information, and further information from Store Operations that stores had not been maintaining completed forms or receiving blank forms for years, Express sent all of its stores a blank Store Banking Routine form on April 1, 2011, and instructed them to complete it. (April 1, 2011 Store Communication, attached as Exhibit A).

---

[1] Plaintiffs claim that Defendant has admitted that making bank deposits is "work" under the FLSA. (Plaintiff's Motion at ¶ 4). Plaintiffs are mistaken. Express has admitted that making bank deposits is compensable work pursuant to Company policy, but has not admitted that such work is necessarily compensable under the FLSA.

5. Accordingly, Express reasonably believes that prior April 1, 2011, Express stores, by and large, were not completing or maintaining Store Banking Routine forms. The Store Banking Routine forms completed after the April 1, 2011 communication was sent out should reflect Express's current policy, which requires all stores to complete bank deposits in the morning. Nevertheless, Express has agreed to collect any Store Banking Routine forms maintained by Express stores throughout the country, and communicated this understanding to Plaintiffs on September 15, 2011 and September 19, 2011. (See Plaintiffs' Motion at ¶ 13; Exhibit 3 to Plaintiffs' Motion at p. 7; and Exhibit 5 to Plaintiffs' Motion at p. 1).

6. Plaintiffs claim the Defendant is attempting to delay the production of the Store Banking Routine forms, and that Express's contention that gathering the forms is not a simple task is disingenuous.[2] Plaintiffs are wrong. In their Motion, Plaintiffs focus on Express's ability to communicate with the stores through fax, and that as a result, argue that Express should be able to quickly collect any Store Banking Routine forms maintained by the stores. Plaintiffs are missing the point. In fact, Express has already sent a communication to all stores regarding the Store Banking Routine form. The more difficult undertaking is getting roughly 600 stores to respond to that communication in a timely fashion. These forms are kept at Express' individual stores, and were not sent to corporate headquarters. Express has asked all stores to respond to the communication by Friday, September 30, 2011; however, several stores will undoubtedly miss that deadline, which will necessitate follow-up communications with those stores.

---

[2] Express notes that it has been anything but dilatory in responding to Plaintiffs' discovery requests. Express has timely responded to all of Plaintiffs' discovery requests, including Requests for Admissions, and produced approximately 1,500 pages of responsive documents. Express has not even requested a discovery extension. In contrast, both Plaintiff Edwards' and Mar Callo's discovery responses were late, and together, Plaintiffs have produce only _four_ pages of responsive documents. Also, Express produced its representatives requested by Plaintiffs for deposition; including two Rule 30(b)(6) depositions.

Nonetheless, Express will continue to use its best efforts to gather responses from all stores in a timely fashion, and will provide Plaintiffs with those responses.

7.     Plaintiffs reference that they filed their motion despite Express's agreement to produce the documents because their memorandum in support of their Motion for Conditional Collective Action Certification is required to be field on October 11, 2011.   However, the expedited briefing schedule on Plaintiffs' Motion for Conditional Collective Action Certification was at the request of Plaintiffs, not Express.   Plaintiffs filed their Motion for Conditional Collective Action Certification on July 11, 2011, just days after the filing of the Complaint.   It is the Plaintiffs who have insisted on a short schedule ever since, even after the Court tolled the statute of limitations.   Also, Plaintiffs have failed to establish why they need the subject documents prior to filing their motion. Moreover, Defendant produced a survey that was completed in 2010 identifying in essence the same information contained in the routine bank deposits form, namely the identification of the store, whether the deposit is taken to the bank in the am or pm, whether the deposit location is in the mall, and whether an armored car service picks up the store's bank deposits.

## II.     Express's Responses to Plaintiffs' Requests for Production of Documents

8.     In response to Plaintiffs' document requests, Express produced 1,488 pages of responsive documents as kept in the usual course of business.   Plaintiffs now ask this Court to compel Defendant to "amend its responses to Plaintiffs' document production requests and identify by bates number the particular documents that Defendant asserts are responsive to each production request."[3]   (Plaintiffs' Motion at p. 9).

---

[3] While Plaintiffs' Motion is not clear, Plaintiffs also allege Express' unwillingness to provide citations to bates numbers of documents produced relating to its interrogatory responses.  Express in fact provided such citations to Plaintiffs. (See Defendant's Amended Objections and Answers to Plaintiffs' Interrogatories, attached as Exhibit B).

9. Federal Rule of Civil Procedure 34(b) specifically states that a party may "produce documents as they are kept in the usual course of business." Fed. R. Civ. P. 34(b)(2)(E)(i). "The rules do not require anything further." *Jacks v. DirectSat USA, LLC*, 2011 U.S. Dist. LEXIS 9351, at **8-9 (N.D. Ill. Feb. 1, 2011) (denying plaintiffs' motion to compel defendants to "identify by bates range which documents are responsive to the plaintiffs' specific requests" when defendants produced documents as kept in the usual course of business).

10. Moreover, in response to Plaintiffs' correspondence of September 10, 2011 regarding Defendant's discovery responses, Defendant assured Plaintiffs that notwithstanding its objections, Express produced documents responsive to each request and has not withheld responsive, non-privileged documents that it located after a reasonable search. (Plaintiffs' Motion, Exhibit 3). Express also assured Plaintiffs that it would supplement its discovery responses and produce any additional responsive documents discovered during the course of litigation. *Id.*

11. Consequently, and contrary to Plaintiffs' disingenuous assertions, Defendant has met its obligations under the Federal Rules of Civil Procedure, and Plaintiffs' request to compel Express to "identify by bates number the particular documents that Defendant asserts are responsive to each production request" should be denied.

EXPRESS, LLC

By: ___/s/James K. Borcia_____
One of Its Attorneys

| | |
|---|---|
| John L. Landolfi (admitted *pro hac vice*) | James K. Borica |
| Adam J. Rocco (admitted *pro hac vice*) | Durga Bharam |
| Vorys, Sater, Seymour and Pease LLP | Nikolai G. Guerra |
| 52 East Gay Street | Tressler LLP |
| Columbus, OH 43215 | 233 South Wacker Drive, 22nd Floor |
| (614) 464-6400 | Chicago, IL 60606 |
| | (312) 627-4000 |

# EXPRESS

Store Operations

Who:     All Stores

What:    Banking Routine Form

Why:     In order to ensure the proper banking procedures are being followed

When:   Today, Friday April 1st, 2011

Where:  In your store's Bank Deposit Log Binder

How:

Enclosed in today's packup is an updated copy of the Banking Routine form. All stores should complete this form as necessary and file it in your Bank Deposit Log Binder. For additional guidelines regarding the banking routine form please follow page 12.1 of your store's SOP Manual. If you need additional copies in the future, please order the form through supply.





**VORYS**

Vorys, Sater, Seymour and Pease LLP
Legal Counsel

52 East Gay St.
PO Box 1008
Columbus, Ohio 43216-1008

614.464.6400 | www.vorys.com

Founded 1909

John L. Landolfi
Direct Dial  (614) 464-8390
Direct Fax  (614) 719-4816
Email jllandolfi@vorys.com

September 15, 2011

**VIA OVERNIGHT CARRIER**

Thomas M. Ryan
Law Office Thomas M. Ryan, P.C.
35 East Wacker Drive, Suite 650
Chicago, IL 60601

      Re:    Wynn v. Express, LLC
              Case No.:  11-cv-4588

Dear Tom:

      I write in response to your correspondence of September 10, 2011.  On September 2, 2011, you sent us two emails identifying what we thought were Plaintiffs' questions and concerns regarding Defendant's discovery responses.  As you know, the parties discussed those issues on September 6, 2011, and then Doug Matthews sent Plaintiffs' counsel an email confirming that conversation.  Consequently, we were surprised to receive your September 10, 2011 letter, which raises several new issues and concerns with Defendant's discovery responses that were not mentioned in your previous communications or discussed by the parties on September 6, 2011.  By raising these new issues after the parties already discussed Plaintiffs' concerns, and after Defendant responded to Plaintiffs' prior communications, Express finds itself in the difficult position of trying to respond to a moving target.  Nevertheless, in a spirit of cooperation, Defendant responds to the issues raised in Plaintiffs' September 10, 2011 correspondence as follows:

Request No. 1

      Defendant confirms that it has produced relevant documents responsive to Request No. 1 located after conducting a reasonable search.




**Legal Counsel**

Request No. 2

      Although Defendant maintains that it is not required to provide the information requested at this stage of the litigation, Express, in an effort to resolve this issue, might be willing to provide Plaintiffs with the approximate number of Co-Managers and Hourly Employees it employed during the relevant period.

Request No. 3

      Defendant has not withheld any "other confidential" documents from the Plaintiffs' personnel files. Plaintiffs' complete personnel files, as maintained by Express, have been produced. Defendant has also produced additional responsive documents, including the following: (1) payroll records for the named Plaintiffs; and (2) punch records for the named Plaintiffs.

Request No. 4

      The Request remains overbroad. This case does not involve or relate to all aspects of Plaintiffs' employment with Express. Instead, this case relates solely to store bank deposits made at night. For example, written guidelines detailing how Express expects its associates to fold and stock clothes are not relevant to Plaintiffs' claims or reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding Defendant's objections, Express has already produced relevant documents responsive to this request, including The Insider Guide and the Benefits Guide, and has not withheld any responsive, non-privileged documents.

Request No. 5

      The phrase "all compensation programs or plans" is vague and ambiguous and is not a commonly used phrase, nor is it a defined term. The request is overly broad and unduly burdensome because it could be interpreted to include every document sent to employees or generated by Express that mentions associate compensation during the relevant period, such as individual employee compensation details. Notwithstanding Defendant's objections, Express has already produced documents responsive to this request, specifically the Benefits Guide and The Insider Guide.

Request No. 6

      It appears that, by way of your letter of September 10, 2011, Plaintiffs have clarified this request as seeking <u>only</u> "documents relating to [Defendants'] payroll and



**VORYS**
Legal Counsel

compensation practices for time employees spent making Bank Deposits." We agree that this revised, much more narrow request is not unduly burdensome or overly broad. Nevertheless, Express has not withheld any documents responsive to this request, and, as explained above, has already produced documents reflecting its compensation policies and the payroll records for the named Plaintiffs.

Request No. 7

      The request is overly broad and unduly burdensome because it could be interpreted to include every document sent to associates or generated by Express that references any of the duties and responsibilities of Co-Managers or Hourly Employees. Notwithstanding Defendant's objections, Express has produced a Co-Manager (EXPWYNN00008) and a Hourly Employee (EXPWYNN00007) job description.

Request Nos. 8 – 9

      Plaintiffs have defined "Bank Deposits" in multiple ways throughout this litigation, none of which are consistent or reasonably clear. In Plaintiffs' discovery requests, the definition of "Bank Deposits" refers to the "practice as alleged in Plaintiffs' complaint." However, bank deposits is not specifically defined in the complaint. Plaintiffs' definition also indicates that "Bank Deposits" only refer to bank deposits made "before or after [employees'] scheduled shift times." This is also vague and ambiguous. For example, a shift may end before it was scheduled to end. In other words, if an employee was scheduled to work until 10:00 p.m., but clocked out at 9:50 p.m. and then made a bank deposit, Plaintiffs' definition of "Bank Deposits" would not appear to cover the deposit. Additionally, Plaintiffs' definition of "Bank Deposits" in their Requests to Admit differs from the definition in their discovery requests, which only confuses matters further. Specifically, in Plaintiffs' Requests to Admit, "Bank Deposits" are defined as unpaid bank deposits, which are not necessarily the same as bank deposits made before or after an employee's scheduled shift time. In your September 2, 2011 correspondence, you indicate that Plaintiffs now wish to define "Bank Deposits" as deposits that were made "off-the-clock", which again could be different from unpaid bank deposits or bank deposits made before or after an employee's scheduled shift.

      These requests are also overly broad and unduly burdensome because they could be interpreted to include payroll records for every Co-Manager and Hourly Employee who made a bank deposit during the relevant period. Not to mention that we have been telling you, and discovery has shown, that there is no way of confirming who made a bank deposit on any given day for any given store. Notwithstanding Defendant's objections, Express has already produced relevant documents responsive to these requests and has not withheld any responsive, non-privileged documents.


**Legal Counsel**

Request Nos. 10 – 12

Defendant maintains that these requests are overbroad and seek information not reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs take the position that they are entitled to documents regarding any case involving compliance with federal or state wage laws, any lawsuit or other claims asserted against Express regarding failure to pay wages or overtime, and any claims or investigations by the federal or state Departments of Labor relating to Defendant's alleged failure to pay wages or overtime pay. Defendant disagrees. These requests are <u>not</u> narrowly tailored to the claims asserted against Express in this action: the compensation of Defendant's associates with respect to making and transporting bank deposits. Plaintiffs have provided no explanation as to why documents from cases or investigations involving non-related claims are relevant to this case. Further, in its Answer to Interrogatory 10, Defendant states the following: "it has been a party to one lawsuit, <u>Kerri Eggins, et al. v. Express, LLC</u>, Case No. 10 CH 38790, Circuit Court of Cook County, Illinois, relating to compensation of its associates with respect to transporting and making bank deposits. Defendant has not been a party to any other lawsuit, administrative proceeding, or known investigation regarding the compensation of its associates with respect to transporting and making bank deposits." Plaintiffs' counsel is already in possession of documents from the <u>Eggins, et al. v. Express, LLC</u> matter, and as s a result, Defendant is not required to produce that information.

Request No. 13

The request is overbroad in that it seeks emails potentially unrelated to this case, such as emails concerning employee medical issues. Additionally, the request is overly broad because it is not limited to the agreed upon custodians and search terms. As you know, the parties have had ongoing and productive discussions on ESI and have had multiple ESI conferences. Pursuant to and consistent with those discussions and the parties' agreements on ESI, Express has already produced relevant documents responsive to this request and has not withheld any responsive, non-privileged documents.

Request No. 14

The request is overly broad, vague, and ambiguous because it could be interpreted to include all documents relating to meetings where the issue of "time keeping" was discussed, as opposed to meetings where the issue of "time keeping for the time spent making Bank Deposits" at night was specifically discussed. Notwithstanding Defendant's objections, Express has already produced relevant documents responsive to this request and has not withheld any responsive, non-privileged documents.


**VORYS**
Legal Counsel

Request No. 15

      The request is vague and ambiguous because the phrase "Bank Deposits" is vague and ambiguous, which Defendant explained in detail in response to Requests Nos. 8-9, above. Notwithstanding Defendant's objections, Express has already produced relevant documents responsive to this request and has not withheld any responsive, non-privileged documents.

Request No. 17

      The request is overly broad and unduly burdensome because it could be interpreted to include every document regarding any alleged wage and hour violation. The request is not narrowly tailored to the allegations in the Complaint. It is vague and ambiguous for the same reason. It now appears that, by way of your letter of September 10, 2011, Plaintiffs have limited this request to the allegations in the Complaint. Nevertheless, Express has already produced relevant documents responsive to this request and has not withheld any responsive, non-privileged documents.

Request No. 18

      The request is overly broad, unduly burdensome, and oppressive because it asks for all documents relating to employee discipline for failing to keep accurate time records. Associate disciplinary documents are generally kept in associate personnel files, which are maintained at each store, but also could be located in separate files maintained by store management. Therefore, to fully comply with this request, Defendant would have to examine the personnel file of every single associate employed by Express during the relevant period as well as talk with store management at each store. Such a request is clearly unduly burdensome at this stage of the litigation.

Request No. 19

      Notwithstanding Defendant's objections, Express has already produced relevant documents responsive to this request and has not withheld any responsive, non-privileged documents.

Request No. 20

      The request is overbroad because it is not limited to the agreed upon custodians and search terms. As you know, the parties have had ongoing and productive discussions on ESI and have had multiple ESI conferences. Pursuant to and consistent with those discussions and


**VORYS**
Legal Counsel

the parties' agreements on ESI, Express has already produced relevant documents responsive to this request and has not withheld any responsive, non-privileged documents.

Request No. 21

The request is vague and ambiguous because the phrase "Bank Deposits" is vague and ambiguous, which Defendant explained in detail in response to Requests Nos. 8-9, above. Additionally, the request is overly broad and unduly burdensome because it could be interpreted to include every email sent during the relevant period that mentions hours worked by any associate. The request is also overly broad because it is not limited to the agreed upon custodians and search terms. As you know, the parties have had ongoing and productive discussions on ESI and have had multiple ESI conferences. Pursuant to and consistent with those discussions and the parties' agreements on ESI, Express has already produced relevant documents responsive to this request and has not withheld any responsive, non-privileged documents.

Request No. 22

The request is vague and ambiguous because the phrase "Bank Deposits" is vague and ambiguous, which Defendant explained in detail in response to Requests Nos. 8-9, above. Notwithstanding Defendant's objections, Express has already produced relevant documents responsive to this request and has not withheld responsive, non-privileged documents. Additionally, Defendant has supplemented its production and produced the Armored Car Store List mentioned during Joe Reisinger's deposition.

Request No. 23

Defendant maintains that the undefined term "corporate officers" is vague and ambiguous, as it is a broad term that is not consistently used from organization to organization. Additionally, the request is overly broad because it is not limited to the agreed upon custodians and search terms. As you know, the parties have had ongoing and productive discussions on ESI and have had multiple ESI conferences. Pursuant to and consistent with those discussions and the parties' agreements on ESI, Express has already produced relevant documents responsive to this request and has not withheld any responsive, non-privileged documents.

Request No. 24

The request is vague and ambiguous as it is still not clear what is meant by the undefined phrase "material changes." The request is also overly broad because it is not limited to the agreed upon custodians and search terms. As you know, the parties have had ongoing and



**VORYS**
Legal Counsel

productive discussions on ESI and have had multiple ESI conferences. Pursuant to and consistent with those discussions and the parties' agreements on ESI, Express has already produced relevant documents responsive to this request and has not withheld any responsive, non-privileged documents.

<u>Additional Concerns with Defendant's Responses to Plaintiffs' Document Requests</u>

Express has not withheld any documents based on "a proprietary and/or confidential information" objection. Additionally, Defendant confirms that it has produced relevant, non-privileged responsive documents located after a reasonable search. Defendant will supplement its discovery responses and produce any additional responsive documents discovered during the course of this litigation.

<u>Interrogatories, Additional Responsive Documents, Ms. Perkins, and Request for Admissions</u>

As promised, Defendant has revised its responses to Plaintiff's First Set of Interrogatories to include the bates range of documents referenced in our interrogatory responses, and has made additional revisions consistent with the parties' September 6, 2011 conversation. Enclosed please find Defendant's Amended Answers and Objections to Plaintiff's First Set of Interrogatories.

Defendant is also hereby supplementing its document production with the following enclosed documents: (1) a clear copy of the June 2011 survey results, which has been bates labeled and should be substituted for Plaintiffs' Deposition Exhibit No. 7; (2) a Store List (store number and location as agreed); (3) the Armored Car Store List referenced in Joe Reisinger's deposition[1]; and (4) the Store Banking Routine Form, which has been bates labeled and should be substituted for Plaintiffs' Deposition Exhibit No. 12. As for your request for the Store Banking Routine Form from every store throughout the country, it is our understanding that the Banking Routine Form has not been regularly used by the stores. Nonetheless, we have undertaken to collect any Store Banking Routine Forms maintained by Express stores throughout the country. Please understand, however, that this is not a simple or easy task. As you now know, the stores do not have readily available email capability. Consequently, we will not be able to collect these forms by Friday.

---

[1] Defendant is producing this document electronically on a disk. Consequently, it will not be included in the email correspondence sent today, but will be enclosed with the hard copy of this correspondence.



**VORYS**
Legal Counsel

Also, I have reached out to Ms. Perkins with respect to her availability for deposition. She has indeed begun her new job. She advised that she is in Denver, Colorado this week for training, in California next week, and Arizona the following week, all for her new job. I am glad to discuss how you think we should proceed.

Lastly, we are in receipt of Jeff Brown's September 9, 2011 correspondence regarding Defendant's Responses to Plaintiffs' First Set of Requests for Admissions and are in the process of preparing a response, which we should have to you early next week as Adam and I will be out of the office this Thursday and Friday.

Please call me if you have any questions or if you would like to discuss these matters further.

Very truly yours,

John L. Landolfi

JLL/ajr
Enclosure
cc:     James X. Bormes
        Jeffrey Grant Brown
        Peter E. Converse
        Catherine P. Sons
        James K. Borcia
        Durga M. Bharam
        Nikolai G. Guerra

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ERIC WYNN, ROCHELLE EDWARDS, and TISHA MAR CALLO, individually and on behalf a class of persons similarly situated, | ) ) ) ) | Hon. James F. Holderman |
| | ) | Hon. Mag. Susan E. Cox |
| Plaintiffs, | ) ) | Case No. 11 cv 4588 |
| v. | ) ) | |
| EXPRESS, LLC, | ) ) | |
| Defendant. | ) | |

### DEFENDANT EXPRESS, LLC'S AMENDED ANSWERS AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES

NOW COMES the Defendant, EXPRESS, LLC ("Express" or the "Company"), by and through its attorneys, Tressler LLP and Vorys, Sater, Seymour and Pease LLP, and submits the following amended answers and objections to Plaintiffs' First Set of Interrogatories.

### PRELIMINARY STATEMENT

Defendant has amended its answers to Plaintiffs' First Set of Interrogatories pursuant to the parties' September 6, 2011 Local Rule 37.2 conference. Defendant's answers to Plaintiffs' First Set Interrogatories are based upon information and documents currently available. Defendant's research, investigation, discovery and analysis are continuing. Defendant reserves the right to make changes to its answers or to present new and additional information at trial, to correct errors or omissions, to reflect more accurate information or to include subsequently discovered facts concerning matters covered by these interrogatories. Defendant reserves the right to supplement and amend any of its answers at any time prior to trial.

No answer to these interrogatories shall be construed as an express, implied or incidental admission by Defendant as to the relevancy, reasonableness, discoverability, or admissibility of

the information contained therein. Answers made subject to an objection are made to demonstrate a good faith effort to answer the interrogatory and are not intended to constitute and shall not be construed as a waiver of any objection. Documents produced by Defendant in response to these interrogatories are subject to the Protective Order entered by the Court on July 28, 2011.

## GENERAL OBJECTIONS

Defendant sets forth its General Objections to Plaintiffs' First Set of Interrogatories, which are applicable to all of Defendant's answers.

1. Defendant objects to producing any information in response to the interrogatories that is protected by the attorney-client privilege, the work product doctrine or any other applicable protection, restriction or immunity from discovery.

2. Defendant objects to the interrogatories to the extent that they seek or purport to impose on Defendant obligations other than those prescribed by the Federal Rules of Civil Procedure or any order entered by the Court in this matter.

3. Defendant objects to Plaintiffs' definitions and interrogatories to the extent that they are overly broad, ambiguous, and/or confusing.

4. Defendant objects to the interrogatories to the extent they seek information not reasonably available to Defendant or in Defendant's possession or control.

5. Defendant objects to the interrogatories to the extent that providing the requested information would impose an unreasonable burden and expense upon Defendant.

6. Defendant objects to the interrogatories to the extent that they seek information duplicative of other requests.

7. Defendant objects to the interrogatories to the extent that they call for legal conclusions.

8.     Defendant objects to the interrogatories to the extent that the information sought is a matter of public record, which is equally accessible and available to Plaintiffs, on the grounds that providing such information would impose an unreasonable burden and expense upon Defendant.

9.     Defendant objects to the term "Bank Deposits" on the ground that it was not sufficiently defined by Plaintiffs.

10.    By answering the interrogatories, Defendant does not concede that such an answer is relevant, material, or admissible in evidence.  Defendant reserves the right to object to the use of such answers as evidence.

11.    By answering the interrogatories, Defendant does not intend in any way to waive its rights to protecting the confidential and/or proprietary nature of business or personal information except pursuant to an appropriate confidentiality agreement and/or protective order.

12.    Defendant objects to the interrogatories to the extent that they do not include a reasonable time frame applicable to the request.

13.    Each of Defendant's objections apply, without exception, to the interrogatories, whether or not subject objections are repeated within the response or specific obligations to any particular Interrogatory.

Subject to and without waiving the foregoing General Objections, Defendant answers the interrogatories as follows:

## INTERROGATORIES

1.     Identify each Person who has provided information to answer each of these Interrogatories, and his or her job title, and Identify all Documents reviewed or referenced in preparation for Defendant's answers to these Interrogatories.

**ANSWER:** Defendant objects to this interrogatory on the ground that it is overly broad. Defendant further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving the foregoing objections, Defendant states that a number of Express employees provided the information necessary to answer these interrogatories, including the following: (1) Brittany Perkins, Manager, Stores Human Resources; (2) Felicia Patel, Specialist, Stores Human Resources; (3) Craig Heckman, Vice President, Stores Human Resources; (4) Sarah Meske, Manager, Stores Human Resources; (5) Janice Zanjani, Project Manager, Initiatives; (6) Joe Reisinger, Vice President, Security; and (7) Joshua Dykstra, Loss Prevention. The above individuals can be contacted through Defense counsel. Answering further, see generally the documents produced in response to Plaintiffs' Requests for Production of Documents.

2.     For the period of July 7, 2008 up to and including the present, Identify all means of ascertaining, recording and tracking the total time Defendant's employees spent making bank deposits and Identify the types of Documents containing and recording said time.

**ANSWER:** Defendant objects to this interrogatory on the grounds that it is vague and overly broad. Subject to and without waiving the foregoing objections, Express employees are required to clock in and out of work every day through the Company's electronic timekeeping system. Answering further, pursuant to Company policy, Express employees are required to be clocked into the Company's timekeeping system while working and are responsible for notifying a manager if the their time records are inaccurate. Answering further, see documents produced in response to Plaintiffs' Requests for Production of Documents.

3.     For the period of July 7, 2008 up to and including the present, Identify the location and

address of all Defendant's stores in the United States where Defendant's employees engaged in

the Bank Deposit practices alleged in Plaintiffs' Complaint at any time during such time period.

**ANSWER:**     Defendant objects to this interrogatory on the grounds that it is overly

broad, unduly burdensome, and misleading.  Defendant further objects on the ground that this

interrogatory is premature in that a collective action has not yet been certified.  Defendant also

objects to this interrogatory on the grounds that it is vague and ambiguous, particularly that the

phrase "Bank Deposit practices alleged in Plaintiffs' Complaint" is vague and not defined.

Finally, Defendant objects to this interrogatory to the extent it seeks information protected by the

attorney-client privilege and/or the attorney work product doctrine.  Subject to and without

waving the foregoing objections, Defendant states that pursuant to Company policy, prior to

October 2010, Express stores with bank depositories located in the mall were permitted to make

bank deposits in the evening and that stores with bank depositories located outside the mall were

required to make bank deposits in the morning.  Answering further, from October 2010 to the

present, all Express stores have been required to make bank deposits in the morning.  Answering

further, and pursuant to Federal Rule of Civil Procedure 33(d), see documents produced in

response to Plaintiffs' Requests for Production of Documents, including, but not limited to, the

September 2010 Loss Prevention survey results (EXPWYNN00402 – EXPWYNN00875); the

Banking Routine section of the Company's 2008, 2009, and 2010 Store Operating Procedure

("SOP") manual (EXPWYNN00236 – EXPWYNN00247); and The Insider Guide

(EXPWYNN00009 – EXPWYNN00053).

4.      For the period of July 7, 2008 up to and including the present, Identify the location and address of all Defendant's stores in the United States that did not engage in the Bank Deposit practices alleged in Plaintiffs' Complaint at any time during such time period.

**ANSWER:**   See Defendant's Answer to Interrogatory No. 3.

7[sic]. For the period of July 7, 2008 up to and including the present, please describe DEFENDANT'S procedures, policies and practices regarding the handling of bank deposits by CO-MANAGERS and HOURLY EMPLOYEES after the end of their scheduled shift time, including, without limitation, the compensability of the time CO- MANAGERS and HOURLY EMPLOYEES spent making the Bank Deposits.

**ANSWER:**   Defendant objects to this interrogatory on grounds that it is overly broad, misleading, and unduly burdensome.  Defendant further objects to this interrogatory on the grounds that it is vague and ambiguous, particularly that the phrases "after the end of their scheduled shift time" and "bank deposits" are vague and not defined or not clearly defined. Defendant also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to and without waving the foregoing objections, see Defendant's Answers to Interrogatories Nos. 2 and 3. Answering further, and pursuant to Federal Rule of Civil Procedure 33(d), see documents produced in response to Plaintiffs' Requests for Production of Documents, including, but not limited to, the Banking Routine section of the Company's 2008, 2009, and 2010 SOP manual (EXPWYNN00236 – EXPWYNN00247) and The Insider Guide (EXPWYNN00009 – EXPWYNN00053).

8.      Identify all surveys, questionnaires or formal or informal audits of any of Defendant's United States stores that refer or relate to the time, effort and/or requirement undertaken by CO

MANAGERS and/or HOURLY EMPLOYEES in making Bank Deposits, for the period of July 7, 2008 up to and including the present, and for any such survey, questionnaire or audit, identify the drafter(s), sender(s), recipient(s), the date it was issued and/or undertaken, the reason it was issued and/or undertaken, the location of the stores responding to and/or participating in such survey, questionnaire and/or audit, and include a brief summary of the results.

**ANSWER:** Defendant objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waiving the foregoing objections, Defendant states that its Loss Prevention Department conducted a nationwide, electronic survey regarding the bank deposit practices of the Company's stores in September 2010 in order to identify the bank deposit practices at each store. The September 2010 Loss Prevention survey was created by Joe Reisinger and was sent to all stores. The Loss Prevention survey results have been produced (EXPWYNN00402 – EXPWYNN00875). Defendant further states that Human Resources conducted a nationwide survey regarding the location of non-mall bank depositories in June 2011. The June 2011 survey was created by Brittany Perkins and was sent to all stores. The Human Resources survey results have been produced (EXPWYNN00911 – EXPWYNN00920). Finally, Defendant states that Loss Prevention conducted a Bank Deposit Policy/Safety survey in September 2008 to identify the bank deposit practices at each store. That survey has been produced (EXPWYNN00001); however, after conducting a reasonable search, Defendant states that the results of that survey, which were not stored electronically, no longer exist.

9.      For the period of July 7, 2008 up to and including the present, identify all changes to DEFENDANT'S bank deposit procedures, policies and practices, including, without limitation, the reasons for any change made to the Bank Deposit procedures, policies and practices.

**ANSWER:**    Defendant objects to this interrogatory on grounds that it is overly broad and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory on the grounds that it is vague and ambiguous, particularly that the phrase "bank deposits procedures, policies, practices" is vague and not clearly defined. Defendant also objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine. Subject to and without waving the foregoing objections, and pursuant to Federal Rule of Civil Procedure 33(d), see documents being produced by Express, including, but not limited to, the Banking Routine section (section 12) of the Company's 2009 and 2010 SOP manual (EXPWYNN00240 – EXPWYNN00247). Answering further, Defendant changed its bank deposit procedures for stores with in-mall bank depositories in October 2010 to ensure compliance with Company policy, practices, and values.

10.      Please list any lawsuits, prosecutions, administrative proceedings, and all reviews, examinations, investigations, citations, warning, findings or actions by the U.S. Department of Labor and/or any state Department of Labor that refer or relate to Bank Deposits in which DEFENDANT has been a party since July 7, 2008, providing the style, cause number and court or agency in which each action was pending, and briefly describing the nature of the proceeding.

**ANSWER:**    Defendant objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this interrogatory to the extent it

8

seeks information protected by the attorney-client privilege and/or the attorney work product

doctrine. Subject to and without waiving the foregoing objections, Defendant states that it has

been a party to one lawsuit, <u>Kerri Eggins, et al. v. Express, LLC</u>, Case No. 10 CH 38790, Circuit

Court of Cook County, Illinois, relating to compensation of its associates with respect to

transporting and making bank deposits. Defendant has not been a party to any other lawsuit,

administrative proceeding, or known investigation regarding the compensation of its associates

with respect to transporting and making bank deposits.

Respectfully submitted,

EXPRESS, LLC
By:   /s/John L. Landolfi
     One of Its Attorneys

| | |
|---|---|
| John L. Landolfi (admitted *pro hac vice*) | James K. Borica |
| Adam J. Rocco (admitted *pro hac vice*) | Durga Bharam |
| Vorys, Sater, Seymour and Pease LLP | Nikolai G. Guerra |
| 52 East Gay Street | Tressler LLP |
| Columbus, OH 43215 | 233 South Wacker Drive, 22nd Floor |
| (614) 464-6400 | Chicago, IL 60606 |
| jllandolfi@vorys.com | (312) 627-4000 |
| ajrocco@vorys.com | dbharam@tresslerllp.com |
| | jborcia@tresslerllp.com |
| | nguerra@tresslerllp.com |

## PROOF OF SERVICE

The undersigned hereby certifies that he served the foregoing Answers and Objections to

Plaintiffs' First Set of Interrogatories by emailing and mailing copies to the attorneys listed

below, and deposited the same in the U.S. Mail at 52 East Gay Street, Columbus, Ohio 43215 on

the 15th day of September, 2011.

James X. Bormes
Law Office of James X Bormes, P.C.
8 South Michigan Avenue, Suite 2600
Chicago, IL 60603

Jeffrey Grant Brown
35 East Wacker Drive, Suite 650
Chicago, IL 60601

Thomas M. Ryan
Law Office Thomas M. Ryan, P.C.
35 East Wacker Drive, Suite 650
Chicago, IL 60601

Peter E. Converse
Catherine P. Sons
8 South Michigan
Suite 2600
Chicago, IL 60603

Adam J. Rocco