**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ERIC WYNN, ROCHELLE EDWARDS, and TISHA MAR CALLO, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No. 11 C 4588 |
| EXPRESS, LLC, | ) ) | |
| Defendant. | ) ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiffs are three former employees of Express, LLC, a clothing retailer that operates 573 stores in the United States. Plaintiffs have filed a motion (Dkt. No. 46, 54) for conditional certification of a collective action under 29 U.S.C. § 216(b) for Express's alleged violation of the Fair Labor Standards Act ("FLSA") resulting from Express's failure to pay Express employees for time spent delivering the stores' bank deposits after the employees clocked out each night. For the reasons stated below, Plaintiff's motion is granted in part and taken under advisement in part.

FACTUAL BACKGROUND

Prior to October 15, 2010, the 573 Express stores in the United States were subject to the following policy:

> Stores with a bank depository in the mall may make their deposit at night. A few stores have to make deposits at locations which are a short drive from the mall. These deposits should only be made in the morning, never at night.
>
> For all deposits, at least two people must be present. . . .
>
> Even if your drop is in the mall, at least two associates . . . must walk to the

-1-

depository with the deposit discretely concealed in an Express poly bag.
(Dkt. No. 46, Ex. 6.) On October 2, 2010, Express sent notice to all of its stores that the policy was changing, effective October 15, 2012, to require all bank deposits to be made in the morning, rather than allowing some to be made at night. (Dkt. No. 83, Ex. 17 ¶ 3; Dkt. No. 46, Ex. 7.) The plaintiffs are three former Express employees who were required to make bank deposits at night after they had already clocked out. (Dkt. No. 46, at 2.)

## LEGAL STANDARD

The FLSA provides that "[a]n action to recover the liability prescribed in [the FLSA] may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become a member of an FLSA collective action, a prospective plaintiff need only opt-in by consenting in writing and filing the consent in the court in which the action is pending. *Id.* A person who does not consent is not part of the FLSA collective action. *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, at *3 (N.D. Ill. Dec. 22, 2005).

In *Hoffmann-La Roche Inc. v. Sperling*, the Supreme Court held that district courts have discretion to implement the collective action provisions of 29 U.S.C. § 216(b) "by facilitating notice to potential plaintiffs." 493 U.S. 165, 169 (1989). Thus, "[a]lthough a plaintiff in an FLSA collective action is not required to seek leave of the court prior to issuing notice of the lawsuit to prospective members," *Anyere v. Wells Fargo, Co.*, No. 09 C 2769, 2010 WL 1542180, at *1 (N.D. Ill. Apr. 12, 2010), a court presiding over such a case may choose in its discretion to certify a collective action and order that notice be sent to potential plaintiffs. Under the law, before a court may send such notice, the plaintiffs seeking collective relief bear the burden of showing that the potential claimants

are in fact "similarly situated" as required by the FLSA. *Id.* To do so the plaintiffs must make "'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). The required showing is less stringent than that required to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. *Bontempo v. Metro Networks Commc'n*, No. 01 C 8969, 2002 WL 1925911, at *1 (N.D. Ill. May 3, 2002).

If the plaintiffs succeed in making the requisite showing, a court may conditionally certify the action and send notice to the potential collective action plaintiffs. *Flores*, 289 F. Supp. 2d at 1045. After discovery and the opt-in process is complete, the presiding court may reevaluate the conditional certification, typically on a motion by the defendant, "to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Jirak v. Abbott Labs., Inc.,* 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008) (citation and quotation marks omitted). At this second step, "the Court must consider: (1) whether the plaintiffs share similar or disparate employment settings; (2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness and procedural concerns." *Id.*

## ANALYSIS

I.  Conditional Certification

As an initial matter, in this case, Express contends that the court should evaluate the plaintiffs' conditional certification motion under a heightened "intermediate" standard, because "more stringent review may be applied on a motion for conditional certification where substantial discovery already has taken place." *DeMarco v. Nw. Mem'l Healthcare*, No. 10 C 397, 2011 WL

3510905, at *2 (N.D. Ill. Aug. 10, 2011). The parties commenced discovery at the beginning of August 2011, and had the benefit of about five months of discovery before this motion was fully briefed. During that time, the plaintiffs conducted eight depositions, served thirteen interrogatories, and submitted thirty-one document requests. (Dkt. No. 86, at 2.) According to the parties' Form 52, the completed discovery was "targeted to the facts and issues raised by Plaintiffs' pending Rule 216(b) Motion for Conditional Collective Action Certification." (Dkt. No. 25 ("Form 52 Planning Report") ¶ 3; *see also id.* ¶ 4(c)). It was not focused to obtain information about the additional issues that are relevant at the second step. Therefore, additional discovery will likely be necessary to address the unique issues raised at the second step of the certification process, making heightened review now inappropriate. Moreover, Express submitted eight affidavits from individuals whom the plaintiffs have not yet deposed, providing further reason to apply only the relaxed review appropriate for conditional certification. (Dkt. No. 86, at 2.) *See DeMarco*, 2011 WL 3510905, at *2 (holding that the plaintiff's lack of opportunity to depose individuals who submitted affidavits opposing the conditional certification motion meant the record was "far too limited" to justify heightened review).

Turning to the merits, the plaintiffs in this case seek conditional certification for the following class:

> All persons who worked for Defendant as non-exempt employees throughout the United States at any time between July 28, 2008 and October 15, 2010 and who made a night bank deposit.

Express contends that the proposed class should run through October 2, 2010, the date that Express sent a memo to store managers indicating a change in its policy to forbid night bank deposits. (Dkt. No. 83, Ex. 17 ¶ 3.) The policy itself, however, indicates that it was effective on

October 15, 2010, so the court will use that date for the end of the class period. (*See* Dkt. No. 46, Ex. 7.)

In addition, the court finds it necessary to add the clarifying phrase "after clocking-out for the day" at the end of the proposed class definition. The additional phrase is necessary to exclude those employees who made night deposits while being compensated by Express.

With the class appropriately defined, the court now turns to the conditional certification inquiry. To show that the putative members of the proposed class are similarly situated, the plaintiffs have submitted the affidavits or deposition testimony of eight employees who worked at Express stores around the country, and who were required to make night bank deposits after their store closed. (Dkt. No. 46, Exs. 2, 4, 12; Dkt. No. 87, Exs. 6, 7, 8, 9; Dkt. No. 88, Ex. 12.)[1] All of those employees stated that when making night deposits, they clocked out, closed the store, and then traveled some distance to the bank to make the deposit before they were allowed to travel home. (Dkt. No. 46, Exs. 2, 4, 12; Dkt. No. 87, Exs. 6, 7, 8, 9; Dkt. No. 88, Ex. 12.) They stated further that they were not compensated for the time spent making the bank deposit after clocking out. (Dkt. No. 46, Exs. 2, 4, 12; Dkt. No. 87, Exs. 6, 7, 8, 9; Dkt. No. 88, Ex. 12.) In addition, the plaintiffs submitted the deposition testimony of Express's Chicago district manager, who stated that employees performed night bank deposits after clocking out in some of her stores. (Dkt. No. 46, Ex.

---

[1] Some of the plaintiffs' evidence was submitted with their reply brief. "Although evidence presented for the first time in a reply brief is disfavored," the court may consider it in appropriate situations. *Lyon Fin. Servs., Inc. v. Jude's Med. Ctr., Ltd.*, No. 10 C 6957, 2011 WL 6029195, at *3 (N.D. Ill. Dec. 5, 2011). Here, the parties agreed that discovery could continue while the conditional certification motion was being briefed, and the plaintiffs obtained the additional evidence in the reply brief after the plaintiffs' motion was filed. (Dkt. No. 25 ¶ 4(c).) Moreover, Express has not asked for a sur-reply to address the new evidence, indicating that it does not believe it is prejudiced. Accordingly, the court will consider the new evidence in the reply brief.

10, at 35, 78.)

In response, Express contends that the plaintiffs have provided evidence showing that employees made night bank deposits at only a handful of stores. It points to the results of a survey taken in September 2010 indicating that at that time, consistent with Express's written policy, stores that were not located in a mall with a bank branch made deposits during the day. (Dkt. No. 83, Ex. 17 ¶ 11.) Others did not have employees make deposits at all, but instead used an armored car service. (*Id.*) Express also notes that even at stores that performed night bank deposits, some employees, including those who never worked the last shift, never would have performed night deposits.

The court agrees with Express that a potentially large group of Express employees worked at stores that never performed night bank deposits. Another potentially large group, although working at stores requiring some employees to perform night bank deposits, never performed night bank deposits themselves. Express's contentions on those points are irrelevant, however, because the proposed class is already limited to "[a]ll persons who worked for Defendant . . . and *who made a night bank deposit*" (emphasis added). With the court's additional proposed language, "after clocking out for the day," the class definition appropriately limns the class by limiting it to those employees who did not receive compensation for their overtime work.

The plaintiffs have presented evidence from employees at a broad selection of stores across the country that when employees were required to make night bank deposits, they did so after clocking out without compensation. It is reasonable to assume that at least a large segment of employees making night bank deposits at other stores also did so after clocking out without compensation. At this early stage of assessment, the evidence behind that assumption is sufficient

to make the minimal showing required of plaintiffs. *See Burch v. Qwest Commc'ns Int'l, Inc*. 500 F. Supp. 2d 1181, 1187 (D. Minn. 2007) ("[A]t this stage, Plaintiffs are not required to provide evidence showing [defendant]'s illegal practice at every location or that Plaintiffs are identically situated to putative class members in all respects."). As to the limited group of employees in the proposed class, plaintiffs have made a "modest factual showing" of a common policy or plan potentially violating the FLSA.

Express contends that, nonetheless, the court should exclude co-managers from the proposed class, because they may be executive or administrative employees exempt from the overtime requirements of the FLSA. *See* 29 C.F.R. §§ 541.100, 541.200. The question of whether co-managers are appropriately class members can be determined and should be determined at the next step of the certification process. As the plaintiffs point out, Express categorizes co-managers as non-exempt employees. (Dkt. No. 88, Ex. 13.) That in itself is sufficient to make a "modest factual showing" that co-managers who made night bank deposits after clocking out for the day are similarly situated to other non-exempt employees who did so. If further discovery indicates that some co-managers have been mis-classified, the court can and will reevaluate the appropriateness of the inclusion of co-managers as class members at the second stage of certification.

Express's other objections to the proposed class definition are similarly without merit at this stage of the proceedings. Express contends that the Portal-to-Portal Act may preclude liability for some potential plaintiffs, that the amount of time some potential plaintiffs spent making night bank deposits was *de minimis*, and that other procedural or fairness concerns preclude conditional certification. All those arguments are better considered at the second stage of certification, at which the court will consider "(1) whether the plaintiffs share similar or disparate employment settings;

(2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness and procedural concerns." *Jirak*, 566 F. Supp. 2d at 848; *see also In re Pilgrim's Pride Fair Labor Standards Act Lit.*, No. 07 C 1831, 2008 WL 4877239, at *3 (W.D. Ark. Mar. 13, 2008) ("During this first stage of certification, the Court does not make findings on legal issues or focus on whether there has been an actual violation of the law."). The court thus determines that the plaintiffs' proposed class should be conditionally certified.

II.    Notice

Although the proposed class as defined includes only employees who made a night bank deposit after clocking out for the day, the plaintiffs propose to send notice of the pending action to *all* employees who worked for Express during the class period. (Dkt. No. 54, at 2; Dkt. No. 46, at 14-15 ("[T]he best way to identify those persons who made night bank deposits is to ask each one of its employees. This is exactly what the proposed notice accomplishes.").) According to the plaintiffs, that procedure is necessary because Express has not preserved any record of which stores or which employees made night bank deposits after clocking out. In essence, the plaintiffs propose to use the notice procedure to overcome this deficiency and supplement their discovery by asking the members of the class to identify themselves.

The plaintiff's proposal is abnormal because notice is typically sent only to individuals who have already been identified as members of the class. *See Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007) ("If the plaintiff meets this burden, the court may allow what is sometimes termed pretrial conditional certification, which allows notice of the case to be sent to the similarly situated employees."). Indeed, the district court opinion in *Hoffmann-La Roche*, which the Supreme Court affirmed while authorizing district courts to approve notice under 29 U.S.C.

§ 216(b), indicates that the notice in that case was sent only to people already determined to be part of the class. *See Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 415 (D. N.J. 1988) ("I grant plaintiffs' request for mailing notice to newly discovered *class members* . . . ." (emphasis added)). That pattern is typical of most § 216(b) conditional certification cases.

This court has concerns about adopting plaintiffs' abnormal proposal. Sending court-approved notice to individuals who are not members of a proposed class gives the impression that the court is seeking to stir up litigation and has abandoned judicial neutrality, an evil the Supreme Court explicitly warned against in *Hoffman-La Roche*. *See Hoffman-La Roche*, 493 U.S. at 174 ("Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims. In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality."). At the same time, "[b]oth the court and litigants would waste time and resources to notify a potentially overly large and overly diverse class." *See Salazar v. Agriprocessors, Inc.*, No. 07 C 1006, 2008 WL 782803, at *7 (N.D. Iowa Mar. 17, 2008). That concern is particularly strong here, where Express estimates that almost 70,000 employees worked for it during the class period, and yet potentially large numbers of the employees never performed night bank deposits.

Nonetheless, the briefs to date have focused on the propriety of conditional certification, and not on the question of notice. Accordingly, the court will ask for additional briefing on the question of whether it is appropriate under 29 U.S.C. § 216(b) to send court-approved notice to a significantly larger group of individuals than have been conditionally certified in the proposed class. At the same time, counsel are to confer and determine if it is possible to send notice to a smaller subset of the 70,000 employees who are the most likely to have made night bank deposits after clocking out for

the day from their workplace.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for conditional collective action certification (Dkt. No. 46, 54) is granted in part and taken under advisement in part. The court will certify the following conditional class: "All persons who worked for Defendant as non-exempt employees throughout the United States at any time between July 28, 2008 and October 15, 2010 and who made a night bank deposit after clocking out for the day." The parties are each to submit an additional brief by February 27, 2012 on the question of whether it is appropriate under 29 U.S.C. § 216(b) to send court-approved notice to a significantly larger group of individuals than have been conditionally certified in the proposed class. Responses due March 12, 2012. At the same time, counsel are to confer and attempt to come to an agreement on an appropriate subset of Express employees to whom notice should be sent. A status hearing is set for February 21, 2012, at 9 am to report on the parties' progress.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: February 6, 2012