**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ERIC WYNN, ROCHELLE EDWARDS, ) <br> and TISHA MAR CALLO, ) <br> ) <br> Plaintiffs, ) <br> ) No. 11 C 4588 <br> v. ) <br> ) <br> EXPRESS, LLC, ) <br> ) <br> Defendant. ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiffs, three former employees of clothing retailer Express, LLC, filed a motion for conditional certification of a collective action under U.S.C. § 216(b). (Dkt. Nos. 46, 54.) The action alleges that Express violated the Fair Labor Standards Act ("FLSA") by failing to pay its employees for making bank deposits after the employees clocked out each night.

On February 6, 2012, the court granted plaintiffs' motion for conditional class certification in part and certified the following class: "All persons who worked for Defendant as non-exempt employees throughout the United States at any time between July 28, 2008 and October 15, 2010 and who made a night bank deposit after clocking out for the day." (Dkt. No. 91, at 10.) The court also took the motion under advisement in part and requested additional briefing "on the question of whether it is appropriate under 29 U.S.C. § 216(b) to send court-approved notice to a significantly larger group of individuals than have been conditionally certified in the proposed class." (*Id.*) After considering the additional briefing from both parties, the court determines that court-approved notice should be sent only to non-exempt employees who worked at any time from July 28, 2008 through October 15, 2010 at (1) the eleven stores at which employee testimony indicates night bank deposits

occurred after employees clocked out for the day and (2) the additional stores which reported that employees performed night bank after clocking out for the day in the 2010 Survey, excepting only employees in Illinois who did not opt-out of *Eggins v. Express, LLC*, No. 10 CH 38790 (Ill. Cir. Ct. Cook Cnty.), and employees at the twenty-nine stores using an armored car service for bank deposits during the entire class period.

## BACKGROUND

Prior to October 15, 2010, the 573 Express stores in the United States were subject to the following policy:

> Stores with a bank depository in the mall may make their deposit at night. A few stores have to make deposits at locations which are a short drive from the mall. These deposits should only be made in the morning, never at night.
>
> For all deposits, at least two people must be present. . . .
>
> Even if your drop is in the mall, at least two associates . . . must walk to the depository with the deposit discretely concealed in an Express poly bag.

(Dkt. No. 46, Ex. 6.) On October 2, 2010, Express sent notice to all of its stores that the policy was changing, effective October 15, 2012, to require all bank deposits to be made in the morning, rather than allowing some to be made at night. (Dkt. No. 83, Ex. 17 ¶ 3; Dkt. No. 46, Ex. 7.) The plaintiffs are three former Express employees who were required to make bank deposits at night after they had already clocked out. (Dkt. No. 46, at 2.)

Eight employees who worked at eleven Express stores around the country have stated in an affidavit or in a deposition that they were required to make night bank deposits after clocking out. (Dkt. No. 46, Exs. 2, 4, 12; Dkt. No. 87, Exs. 6, 7, 8, 9; Dkt. No. 88, Ex. 12.) All of those employees stated that when making night deposits, they clocked out, closed the store, and then traveled some distance to the bank to make the deposit before they were allowed to travel home. (Dkt. No. 46, Exs.

2, 4, 12; Dkt. No. 87, Exs. 6, 7, 8, 9; Dkt. No. 88, Ex. 12.) They stated further that they were not compensated for the time spent making the bank deposit after clocking out. (Dkt. No. 46, Exs. 2, 4, 12; Dkt. No. 87, Exs. 6, 7, 8, 9; Dkt. No. 88, Ex. 12.) In addition, the plaintiffs submitted the deposition testimony of Express's Chicago district manager, who stated that employees performed night bank deposits after clocking out in some of her stores. (Dkt. No. 46, Ex. 10, at 35, 78.)

In September 2010, Express conducted a written survey (the "2010 Survey") asking the stores in business at the time in the United States the method by which they made bank deposits. (Dkt. No. 83, Ex. 17 ¶ 11.) Only 385 stores responded to the survey. (*Id.* ¶ 11.) Of those 385 stores, 142 stores indicated that they made night bank deposits, and 226 stores indicated they made morning or afternoon deposits. (*Id.*) The survey indicates how stores made bank deposits only at the time of the survey. (Dkt. No. 99, Ex.7, at 11.) In addition, Joe Reisinger, the Vice President for Brand Security at Express, indicated that Express's records show that twenty-nine stores used an armored car service to deliver bank deposits throughout the class period, rather than using associates. (Dkt. No. 83, Ex. 17 ¶ 8.)

## LEGAL STANDARD

The FLSA provides that "[a]n action to recover the liability prescribed in [the FLSA] may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become a member of an FLSA collective action, a prospective plaintiff need only opt-in by consenting in writing and filing the consent in the court in which the action is pending. *Id.* A person who does not consent is not part of the FLSA collective action. *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, at *3 (N.D. Ill. Dec. 22, 2005).

In *Hoffmann-La Roche Inc. v. Sperling*, the Supreme Court held that district courts have discretion to implement the collective action provisions of 29 U.S.C. § 216(b) "by facilitating notice to potential plaintiffs." 493 U.S. 165, 169 (1989). Thus, "[a]lthough a plaintiff in an FLSA collective action is not required to seek leave of the court prior to issuing notice of the lawsuit to prospective members," *Anyere v. Wells Fargo, Co.*, No. 09 C 2769, 2010 WL 1542180, at *1 (N.D. Ill. Apr. 12, 2010), a court presiding over such a case may choose in its discretion to certify a collective action and order that notice be sent to potential plaintiffs. Before a court may send such notice, the plaintiffs seeking collective relief bear the burden of showing that the potential claimants are in fact "similarly situated" as required by the FLSA. *Id.* To do so the plaintiffs must make "'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). The required showing is less stringent than that required to certify a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. *Bontempo v. Metro Networks Commc'n*, No. 01 C 8969, 2002 WL 1925911, at *1 (N.D. Ill. May 3, 2002).

If the plaintiffs succeed in making the requisite showing, a court may conditionally certify the action and send notice to the potential collective action plaintiffs. *Flores*, 289 F. Supp. 2d at 1045. Notice is typically sent only to individuals who have already been identified as members of the class. *See Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007) ("If the plaintiff meets this burden, the court may allow what is sometimes termed pretrial conditional certification, which allows notice of the case to be sent to the similarly situated employees.").

After discovery and the opt-in process is complete, the presiding court may reevaluate the conditional certification, typically on a motion by the defendant, "to determine whether there is

sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 848 (N.D. Ill. 2008) (citation and quotation marks omitted). At this second step, "the Court must consider: (1) whether the plaintiffs share similar or disparate employment settings; (2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness and procedural concerns." *Id.*

## ANALYSIS

I.    Over-Broad Notice

Express employed approximately 70,000 non-exempt employees during the class period. The plaintiffs agree, however, that notice should not be sent to employees at Illinois stores who were part of another class action law suit in Illinois state court[1] involving similar issues. (Dkt. No. 93, at 6.) Accordingly, there are approximately 65,700 employees to whom notice could be sent. (Dkt. No. 94, at 2 n.1.) The plaintiffs contend that notice should be sent to all of those employees. Express, by contrast, contends that notice should be limited to only employees who worked at stores for which there is some evidence that night bank deposits were performed.

Because there is no evidence indicating which individual employees performed night bank deposits after clocking out for the day, any court-approved notice in this case will necessarily be sent to many employees who are not part of the preliminary class. In its order of February 6, 2012, the court expressed concern that sending court-approved notice to such a large group of non-class members may give the impression that the court is seeking to stir up litigation, an action the Supreme Court has instructed courts to avoid. *See Hoffman-La Roche*, 493 U.S. at 174 ("Court

---

[1] *Eggins v. Express, LLC*, No. 10 CH 38790 (Ill. Cir. Ct. Cook Cnty.).

intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims. In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality."). The court also expressed its concern to avoid unnecessarily wasting the time and resources of the parties through over-broad notice. *See Salazar v. Agriprocessors, Inc.*, No. 07 C 1006, 2008 WL 782803, at *7 (N.D. Iowa Mar. 17, 2008).

The additional briefing has failed to allay the court's concerns. The burden to show that the proposed class is similarly situated and that notice is appropriate rests on the plaintiffs. *Anyere*, 2010 WL 1542180, at *1. Here, the court has direct evidence, including employee depositions and affidavits, from eleven stores indicating that those stores required employees to perform night bank deposits. It is appropriate to send notice to employees of those eleven stores. The 2010 Survey indicates that, at least at the time of the survey, an additional 142 stores performed night bank deposits. That evidence constitutes the "modest factual showing" necessary to indicate that employees at those stores are also similarly situated. Notice to employees at those stores is also appropriate. There is no evidence, however, that any of Express's other stores performed night bank deposits. Because the burden is on the plaintiffs, that lack of evidence means that notice to employees at other stores is not appropriate. *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) ("[U]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden.").

The plaintiffs cite several cases that, they contend, show that courts often send notice to a larger group of persons than are actually members of the proposed class. In two of their cases, however, the court authorized notice to employees at only a single facility. *See Madden v.*

*Corinthian Colls., Inc.*, No. 08 C 6623, 2009 WL 4757269, at *3 (N.D. Ill. Dec. 8, 2009) ("Plaintiffs limit the notice of the collective action to Admissions Representatives at the Corinthian's Chicago Loop Campus, not an unwieldy group by any conceivable definition."); *Heckler*, 502 F. Supp. 2d at 781 ("On the other hand, Heckler has not rebutted the evidence offered by defendants reflecting that DK Funding has only one location, not two as Heckler contends in her motion.").

In several other cases, the court authorized notice in the absence of direct evidence of violations at only a limited number of stores in a limited geographical region. *See Anyere*, 2010 WL 1542180, at *3 (sending notice to facilities in two states based on evidence from employees in "several different branches, districts, and regions"); *Jones v. Furniture Bargains, LLC*, 2009 WL 3260004, at *4 (N.D. Ill. 2009) (sending notice to ten stores when employee affidavits provided direct evidence of violations at only two stores); *Russell v. Illinois Bell Telephone Co.*, 575 F. Supp. 2d 930, 937 (N.D. Ill. 2008) (finding that evidence of violations at three facilities justified sending notice to employees at one additional facility). The inference that a practice in place at a few facilities may extend to a handful of other facilities operated by the same company in the same region is quite reasonable. The plaintiffs here, however, are requesting notice to employees at hundreds of stores across the nation. It is more difficult to infer from the testimony of a small group of employees that an employment practice extends to such a wide region, particularly when the 2010 Survey results, the only evidence in the record directly related to stores aside from the limited employee testimony, indicates that some of those stores did not perform night bank deposits. Moreover, sending notice to such a large group of stores would impose a significant cost on the parties, a cost not justified by the speculation that other Express stores may have required night bank deposits. *See Collazo v. Forefront Educ., Inc.*, No. 08 C 5987, 2010 WL 335327, at *3 (N.D. Ill. Jan.

28, 2010) ("Without *any* evidence of similarly situated employees in Florida, Plaintiffs' Motion to gain conditional class certification as to potential plaintiffs at any of Defendants' Florida locations appears to be little more than a speculative fishing expedition.").

The only case plaintiffs cite in which a court authorized nationwide notice based on the testimony of only a few employees is *Nicholson v. UTi Worldwide, Inc.*, No. 09 C 722, 2011 WL 250563 (S.D. Ill. Jan. 26, 2011). In that case, however, the plaintiffs had additional direct evidence of widespread violations because "company officials represented that [the offending] practices were company policy used in other UTi facilities in at least three other states." *Id.* at *4. There is no such additional direct evidence of widespread violations here, so *Nicholson* does not compel broader notice.

The plaintiffs also attempt to shift the burden to Express by arguing that Express should be responsible for its failure to create and maintain records of which employees performed night bank deposits. The plaintiffs attempt to find support for this alleged duty in 29 C.F.R. § 516.2(a)(7), which requires employers to keep records of the total hours worked by each employee. That section, however, requires only a record of an employee's hours, not a record of the tasks that the employee performed. Moreover, Express did keep hourly records for its employees as required. The plaintiffs, of course, allege that those records are inaccurate, but that allegation is the substance of the merits of the plaintiffs' complaint, not evidence of Express's failure to comply with record keeping obligations.

The plaintiffs also contend that Express destroyed night deposit logs, which employees initialed to indicate that they carried out a night bank deposit. To justify sanctions for spoilation, the plaintiffs would have to point to evidence "demonstrat[ing] that the defendants intentionally

-8-

destroyed the documents in bad faith." *Norman-Nunnery v. Madison Area Tech. Coll.*, 625 F.3d 422, 428 (7th Cir. 2010). The plaintiffs have identified no such evidence. Instead, according to Reisinger, Express destroyed the relevant bank deposit records routinely in the regular course of business. (*See* Dkt. No. 93, Ex. 2 at 51; *see also* Dkt. No. 93, Ex. 3, at 59-60.) Accordingly, the absence of night deposit logs does not justify sending over-broad notice.

Finally, the plaintiffs attempt to fault the defendant for failing to perform an investigation to determine which employees performed night bank deposits. Again, however, the plaintiff bears the burden of demonstrating that the employees to whom it wants to send notice are similarly situated. The discovery process provided the plaintiffs the opportunity to gather the information it needed. There is no indication that Express was not cooperative with the process to the extent required by law. Express's obligations extend no further. Accordingly, the absence of an investigation also does not justify over-broad notice.

II.     Stores Using Armored Car Service

Express contends that employees at stores that used an armored car service to make their night bank deposits during the entire class period should be excluded from receiving court-approved notice. The evidentiary basis for its contention is Reisinger's affidavit stating that he maintains a list of Express stores using armored car service, and the date on which the service began. (Dkt. No. 83, Ex. 17 ¶ 8.) That list indicates that twenty-nine stores used armored car service during the entire class period. (*Id.*) The plaintiffs contend that Express's evidence is inadequate to exclude those stores, particularly because Reisinger testified in his deposition, before submitting the affidavit, that he did not know which stores used an armored car service. (Dkt. No. 99, Ex. 7, at 36-37.)

Reisinger's affidavit, provided after he had an opportunity to consult Express's records, is

sufficient evidence to justify excluding the twenty-nine stores which used an armored car service. The plaintiffs have provided no sufficient reason to doubt that the armored car pickups were performed as Express's records indicate. Accordingly, notice need not be sent to any employees at the twenty-nine stores where an armored car service performed bank deposits throughout the class period.

III.    Content of Notice

The parties have both indicated that they are willing to meet and confer regarding the content of the notice. They should do so. The court notes, however, that the notice should not include a heading simply identifying the court, because "[t]his language could suggest to potential plaintiffs that the Court has lent its imprimatur to the merits of this case." *Jirak*, 566 F. Supp. 2d at 851. The notice may, if the parties desire, include the entire case caption. *Id.* Any language in the notice identifying the class should match the class certified by the court: "All persons who worked for Defendant as non-exempt employees throughout the United States at any time between July 28, 2008 and October 15, 2010 and who made a night bank deposit after clocking out for the day." A warning that opt-in plaintiffs may be required to provide information, sit for depositions, and testify in court is not necessary in this case, as there are likely to be several thousand plaintiffs and the possibility that any one of them will testify or sit for a deposition is slim. *See Garcia v. Elite Labor Service, Ltd.*, No. 95 C 2341, 1996 WL 33500122, at *4 (N.D. Ill. July 11, 1996).

CONCLUSION

For the reasons stated above, the plaintiffs may send court-approved notice to non-exempt employees who worked at any time from July 28, 2008 through October 15, 2010 at (1) the eleven stores at which employee testimony indicates night bank deposits occurred after employees clocked

out for the day and (2) the additional stores which reported that employees performed night bank after clocking out for the day in the 2010 Survey, excepting only employees in Illinois who did not opt-out of *Eggins v. Express, LLC*, No. 10 CH 38790 (Ill. Cir. Ct. Cook Cnty.), and employees at the twenty-nine stores using an armored car service for bank deposits during the entire class period. Counsel shall meet and confer regarding the content of the notice consistent with the court's instructions above. The parties shall jointly submit a proposed notice to the court by March 28, 2012.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 14, 2012